IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

MAXFIELD CROUCH,

       Plaintiff,

v.                                     CIVIL ACTION NO. 2:08-0866

SIEMENS SHORT-TERM DISABILITY
PLAN, SIEMENS LONG-TERM
DISABILITY PLAN, METROPOLITAN
LIFE INSURANCE COMPANY, and
DOES 1 through 5, inclusive,

       Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court are the parties' cross-motions for summary judgment (Doc. Nos. 20, 23), as well as plaintiff's motion to strike defendants' memorandum in opposition (Doc. No. 27).  For the reasons set forth below, the court denies the latter motion, denies defendants' motion for summary judgment, and grants in part plaintiff's motion for summary judgment.

### I.  Factual and Procedural Background

There appears to be little dispute between the parties as to the material facts.  Plaintiff Maxfield Crouch is a former employee of Siemens Medical Solutions, a subsidiary of Siemens Corporation, where he worked as a systems analyst.  As a Siemens employee, Crouch participated in two disability benefit plans, a Short Term Disability Plan ("STD Plan") and a Long Term Disability Plan ("LTD Plan").  Although Siemens sponsors the STD

Plan, which is at issue in this matter, the plan is administered by defendant Metropolitan Life Insurance Company ("MetLife").[1]

The STD Plan defines "disability" as follows:

> For purposes of the Plan, "Disability" means a physical or mental condition that prevents an eligible employee from performing all the essential functions of his or her position, with or without reasonable accommodations, for more than seven consecutive calendar days. The disability must be verified by and under the continuous care of an appropriate legally licensed health care practitioner working within the scope of his or her license. The employee must be Actively at Work at the time the disability occurs.

(Doc. No. 18-2 at SM-100002.)

Benefits may be provided under the STD Plan for up to 26 weeks from the date of disability, with a one-week waiting period before benefits commence; however, they continue only so long as the employee continues to meet the plan's definition of "disability." The starting, continuing, and ending dates of the employee's disability must be certified by the employee's health care practitioner.

Where a previously disabled employee returns to work and is then disabled by the same or a related condition within ninety days, this benefits period will be extended by the amount of time

---

[1] Plaintiff's Complaint alleges that he applied for and was denied benefits under the LTD Plan, as well as the STD Plan. (Doc. No. 1 at 4.) It appears that plaintiff now acknowledges that he applied only for STD benefits, but contends that Siemens' role as insurer of the LTD Plan is relevant to the court's standard of review. (Doc. No. 29 at 1-2.) That argument will be addressed *infra*.

during which the employee had resumed work.  After the twenty-sixth week of STD benefits, an employee who remains disabled may qualify for benefits under the LTD Plan, which applies a different definition of "disability."

In January 2006, Mr. Crouch suffered an attack of congestive heart failure and cardiomyopathy, for which he was hospitalized from January 5 to January 11, 2006.  He applied for benefits under the STD Plan on January 17, 2006, and, on January 20, 2006, was notified that his claim had been approved for the period of January 5 to February 14, 2006, based on the Attending Physician Statement ("APS") completed by his treating physician, Dr. Thomas Bowden.  On February 16, 2006, Dr. Bowden supplemented the APS with an echocardiogram ("EKG") report and other records from plaintiff's hospital stay.  Shortly thereafter, Dr. Bowden informed MetLife that plaintiff could be approved to return to work as of March 1, 2006, and MetLife extended his STD benefits accordingly.

Although plaintiff returned to work as anticipated, he did not work beyond the end of the month.  On May 1, 2006, Mr. Crouch filed a recurrent claim for STD benefits.  MetLife then made a number of attempts to confirm the nature of Mr. Crouch's condition and whether his doctor had taken him out of work. Although Dr. Bowden submitted a letter dated May 17, 2006, explaining that Mr. Crouch suffered from cardiomyopathy and

congestive heart failure, the letter did not specify the date of plaintiff's disability.  MetLife then notified both plaintiff and his doctor of the information it would need for its review of his claim.

In mid-August of 2006, Dr. Bowden faxed a letter to MetLife with additional information about Mr. Crouch's condition.  Dr. Bowden noted that plaintiff had a diagnosis of congestive heart failure for which he had been hospitalized.  He went on to explain that the condition was originally diagnosed due to plaintiff's excessive alcohol consumption, and that Mr. Crouch's ejection fraction had improved to approximately 50% after he refrained from alcohol use.  Upon plaintiff's resumption of alcohol use, he had a relapse of heart failure that necessitated further hospitalization, multiple medications, and the placement of a cardiac defibrillator.  As of his June 2006 EKG, his ejection fraction had degraded to approximately 30%.  Dr. Bowden also opined that gainful employment would be possible if Mr. Crouch refrained from alcohol, an opinion he had discussed with Mr. Crouch previously.  (Doc. No. 18-6 at SM-100355.)

Because this letter from Dr. Bowden did not include the date upon which plaintiff could be considered disabled after leaving work in March, MetLife again contacted plaintiff and Dr. Bowden. Dr. Bowden forwarded additional medical records in late August 2006, but did not specify plaintiff's recurrent date of

-4-

disability.[2]  When plaintiff's claim was subsequently reviewed, MetLife determined that the records on file did not support a claim for additional STD benefits based on his cardiomypathy. MetLife followed up by again calling Dr. Bowden to inquire whether he had advised Mr. Crouch not to work after March 31, 2006.

MetLife informed plaintiff of the denial of his claim in a telephone call on August 28, 2006, and advised him of his appeal rights and of the need for additional documentation supporting his disability.  After advising plaintiff a second time that his appeal should include additional documentation, MetLife received an August 30, 2006, EKG showing a left ventricular ejection fraction of 35%.  (Doc. No. 18-5 at SM-100308-309.)  MetLife determined that it should consider this additional information before issuing a denial letter, and it requested a cardiac consult for plaintiff's claim at the same time it reviewed the demands of plaintiff's job description.  In a telephone call on September 19, 2006, MetLife told Mr. Crouch that his benefits

---

[2]  These records included a Charleston Area Medical Center ("CAMC") emergency department evaluation from April 16, 2006, and discharge summary from April 19, 2006; an April 12, 2006, letter from Arrhythmia Treatment Associates, PLLC, to Dr. Steven McCormick of Associated Cardiology of Charleston; an August 10, 2006, progress note and a June 14, 2006, emergency department evaluation form, both from CAMC; a May 31, 2006, EKG showing an ejection fraction of 30%; and Dr. Bowden's progress notes from plaintiff's May 2 and May 15, 2006, office visits.

would be terminated because no physician had declared him disabled from performing the duties of his job.

The following day – the day on which plaintiff's denial letter was sent – MetLife received a letter dated September 11, 2006, from plaintiff's cardiologist, Dr. Steven McCormick, which it considered as an appeal of plaintiff's claim.  Dr. McCormick explained that Mr. Crouch had no significant coronary artery disease, but that he had a dilated cardiomyopathy and chronic obstructive pulmonary disease.  (Doc. No. 18-5 at SM-100306.) Dr. McCormick averred that Mr. Crouch's "last evaluation of his ventricle was in January [2006] and showed an ejection fraction on the order of 10-15%."  (Id.)  He continued, "I think given this degree of left ventricular dysfunction there is no question that this gentleman should be considered to be permanently and completely disabled."  (Id.)

After he submitted his appeal letter on October 12, 2006, plaintiff was informed that any additional information to support his appeal would have to be submitted in writing within 180 days. He sent an additional letter on January 12, 2007, in which he explained his position that he had been wrongly denied benefits. At the same time, he forwarded information from the Social Security Administration ("SSA") indicating that he had been awarded social security disability with an effective date of June 1, 2005.  Although this documentation reflected the dates of his

disability, the amount of his benefit, and the timing of his payments, it did not include a substantive opinion setting forth the grounds upon which the SSA deemed him disabled.

In late January 2007, MetLife referred plaintiff's claim for an independent cardiac consult, which was conducted by Dr. Michael Rosenberg, a physician board certified in cardiology, internal medicine, and interventional cardiology. Although Dr. Rosenberg considered a number of different medical records and had a telephone conference with plaintiff's cardiologist, Dr. McCormick, he was not provided with any information relating to plaintiff's award of social security disability benefits.[3] Dr. McCormick informed Dr. Rosenberg that plaintiff should be capable of lifting ten pounds frequently and up to fifty pounds occasionally – tasks required by his job – and described Mr. Crouch as being capable of performing light or sedentary work. (Doc. No. 18-6 at SM-100418-21.)

On the basis of its own review and Dr. Rosenberg's findings, MetLife determined that Mr. Crouch should be awarded STD benefits through May 31, 2006. By letter dated February 8, 2007, plaintiff was informed of this decision and of his right to file a civil suit in opposition to the decision. Mr. Crouch

---

[3] Dr. Rosenberg's report indicates that he considered several test results, as well as progress notes from CAMC, from Drs. Bowden, McCormick, and Chad C. Turner, and from Samantha Stone, a registered nurse. (Doc. No. 18-6 at SM-100418.)

instituted this action on June 24, 2008, invoking the court's federal question jurisdiction under 29 U.S.C. § 1132(e)(1) and 29 U.S.C. § 1001, et seq., the Employee Retirement Income Security Act ("ERISA").  (Doc. No. 1.)  Plaintiff's sole cause of action alleges that defendants violated Section 502(a)(1)(B) of ERISA by denying him benefits and rights to which he was entitled under the Plans.  (Id. at 5.)  Plaintiff alleges that the decision to terminate and deny him benefits was arbitrary, capricious, and not made in good faith.  (Id.)  For relief, plaintiff seeks an order awarding him all benefits due under the Plan, a declaration that his rights and benefits are vested and nonforfeitable, an award of prejudgment interest, attorney's fees, costs, and other appropriate relief.  (Id. at 5-6.)

Defendants moved for summary judgment, arguing that an abuse-of-discretion standard applies to the decision to deny plaintiff benefits, and that MetLife's decision in this case was supported by substantial evidence.  Defendants argue that the evidence indicates that plaintiff ceased working in April 2006 not on the advice of his doctors, but because of his alcohol abuse.  They contend that Dr. McCormick's opinion that Mr. Crouch was permanently and completely disabled was based on an outdated EKG result, and was formed without regard to the functional requirements of Mr. Crouch's position.  Defendants further argue

that the SSA's award of disability benefits is not binding on the plan administrator.

Plaintiff rejoins that the court should analyze MetLife's denial of his claim under the standard applicable to an administrator operating under a conflict of interest, and thus apply a higher level of scrutiny than the abuse-of-discretion standard.  Mr. Crouch argues that MetLife erred by not addressing the decision of the SSA to award him benefits, and by not informing Dr. Rosenberg of the award when he reviewed plaintiff's medical records.  He further argues that MetLife breached its fiduciary duty to him under ERISA by not informing him of the potential availability under the Plan of twenty-four months of benefits based on his alleged alcohol abuse.  Finally, plaintiff argues that this matter should be remanded to the plan administrator because MetLife lacked adequate medical records when it made its decision to deny benefits.

## II.  __Standard of Review__

Turning to the issue of summary judgment, Rule 56 of the Federal Rules of Civil Procedure provides that

> [t]he judgment sought shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  The moving party has the burden of establishing that there is no genuine issue as to any material

fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

As the United States Supreme Court of Appeals stated in Celotex,

"the plain language of Rule 56(c) mandates the entry of summary

judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at

trial."  Id. at 322.

Once the moving party has met its burden, the burden then

shifts to the nonmoving party to produce sufficient evidence for

a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in support
> of the plaintiff's position will be insufficient; there
> must be evidence on which the jury could reasonably find
> for the plaintiff.  The judge's inquiry, therefore,
> unavoidably asks whether reasonable jurors could find, by
> a preponderance of the evidence, that the plaintiff is
> entitled to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "If

the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted."  Id. at 250-51.

Significantly, "a party opposing a properly supported motion for

summary judgment may not rest upon mere allegation or denials of

his pleading, but must set forth specific facts showing that

there is a genuine issue for trial."  Id. at 256.  Finally, "[o]n

summary judgment the inferences to be drawn from the underlying

facts . . . must be viewed in the light most favorable to the

party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The court reviews an ERISA plan administrator's decision to deny benefits under an abuse-of-discretion standard if the plan in question confers discretionary authority on the administrator in the exercise of its power. Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 341 (4th Cir. 2000). Under this standard, a discretionary decision "will not be disturbed if reasonable, even if the court itself would have reached a different conclusion." Id. (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989)).

In determining whether the decision was reasonable, the court considers the following eight factors, among others:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Booth, 201 F.3d at 342-43; Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 359 (4th Cir. 2008).

Plaintiff, citing Doe v. Group Hospitalization and Medical Services, 3 F.3d 80 (4th Cir. 1993), contends that MetLife's role as insurer of the LTD Plan creates a conflict of interest in its

-11-

role as plan administrator.  Although MetLife does not insure the STD Plan, plaintiff argues that its role as insurer of the LTD Plan affects MetLife's defense of claims for STD benefits, which serve as a precursor to LTD benefits: "This posture, attempting to make sure that a Plaintiff does not even have an opportunity to file a claim for LTD benefits, graphically demonstrates the conflicted nature of MetLife's reasoning."  (Doc. No. 29 at 2.)

"[W]hen reviewing an ERISA plan administrator's discretionary determination, a court must review the determination for abuse of discretion and, in doing so, take the conflict of interest into account only as 'one factor among many' that is relevant in deciding whether the administrator abused its discretion.'"  Champion, 550 F.3d at 358 (quoting Metropolitan Life Insurance Co. v. Glenn, 128 S. Ct. 2343, 2351 (2008)).  To be sure, the conflict plaintiff describes is rather attenuated compared with that at issue in Glenn or even in Doe.  To the limited extent it may be considered a genuine conflict of interest, the court will consider it for what it is worth among the other Booth factors.

### III.  Analysis

As noted above, MetLife's decision to deny plaintiff's claim rested in part on its conclusion that he stopped working in April 2006 because of his alcohol abuse.  There is support for this conclusion in the record: Dr. Bowden clearly felt that

plaintiff's condition was greatly affected by his use of alcohol, and in a June 2006 visit to the emergency department at CAMC, plaintiff's chief complaint was that he needed help with his alcohol abuse.  (Doc. No. 18-5 at SM-100321-322.)

Because the Plan covers up to twenty-four months of disability benefits for employees suffering from drug or alcohol abuse, plaintiff asserts that MetLife should have "instructed Mr. Crouch that he could apply for disability benefits based on his alleged alcohol abuse."  (Doc. No. 24 at 22.)  It appears that MetLife did, in fact, look into this possibility but found that plaintiff would not qualify.  (Doc. No. 18-6 at SM-100390.)  To receive such benefits under the terms of the Plan, the employee must be participating in a rehabilitative program, which Mr. Crouch was not.  Indeed, he had refused his doctors' recommendations that he receive inpatient treatment for his alcohol use.[4]  (Doc. No. 26 at 12-13.)  The court therefore finds no fault with MetLife's actions in this regard.

_____

[4]  MetLife also argues that disability benefits for alcohol abuse would have been precluded as a different disabling diagnosis than that for which plaintiff originally received STD benefits.  Under the Plan, "if an eligible employee becomes disabled again due to the same or a related cause after returning to work for ninety (90) days or less, the second period of Disability will be considered a continuation of the first." (Doc. No. 18 at SM-100008.)  Because plaintiff's cardiac condition appears to have been exacerbated by his drinking, an argument might be made that his alcohol abuse is a cause "related" to his original diagnosis.  The court need not decide this issue, however, as plaintiff would not have qualified for the benefits due to his refusal to participate in a rehabilitative program.

The same may not be said of MetLife's review with respect to plaintiff's award of social security disability benefits. MetLife contends that consideration of the award would have been meaningless, as it was not accompanied by an opinion setting forth substantive grounds for the finding of disability.  In support of its argument, MetLife cites <u>Dennison v. Metropolitan Life Ins. Co.</u>, No. 3:07-CV-317-DCK, 2009 U.S. Dist. LEXIS 3377, at *24 (W.D.N.C. Jan. 8, 2009), in which the court found no error in the plan administrator's failure to discuss a social security decision in a claimant's appeal.  The district court explained that "little would be accomplished by discussing an SSI determination that was entirely devoid of any objective medical information.  The existence of an SSI award does not render a decision to deny benefits unreasonable.  [<u>Elliott v. Sara Lee Corp.</u>, 190 F.3d 601, 607 (4th Cir. 1999).]"  <u>Id.</u>

    In <u>Elliott</u>, the Fourth Circuit explained that, in reviewing an ERISA plan's denial of disability benefits, consideration of a disability award by the SSA "should depend, in part, on the presentation of some evidence that the 'disability' definitions of the agency and Plan are similar."  <u>Elliott</u>, 190 F.3d at 607. Even if the definitions are similar, the court held, the administrative law judge's disability findings could be considered as evidence, but were not determinative.  <u>Id.</u> Applying these precepts to the case before it, the Court

concluded as follows: "Since Social Security determinations are not binding on the [ERISA plan's] Appeal Committee and there is no indication that the disability standards are analogous, the Plan Administrator was under no obligation to weigh the agency's disability determination more favorably than other evidence." Id. (emphasis added).

Several district courts in the Fourth Circuit have concluded, on the basis of this language, that a plan administrator's failure even to consider an award of benefits by the SSA constituted an abuse of discretion. See Hines v. Unum Life Ins. Co. of America, 110 F. Supp. 2d 458, 468 (W.D. Va. 2000)("While Unum is not bound in any way by the determinations of the ALJ, it should have at least considered those findings as relevant evidence."); Thomas v. ALCOA Inc., No. RDB-07-1670, 2008 U.S. Dist. LEXIS 67668, at *37 (D. Md. Sept. 5, 2008)("While Alcoa is not bound by the Administrative Law Judge ("ALJ"), its findings should have been weighed by the company as relevant evidence."); Walden v. Rexam, Inc., No. 3:06-CV-310-CMC, 2007 U.S. Dist. LEXIS 40098, at *30-32 (D.S.C. June 1, 2007)(SSA decision not binding, but it was an abuse of discretion to fail to address it). See also Cossio v. Life Ins. Co. of N. Am., 240 F. Supp. 2d 388, 394 (D. Md. 2002)(citing Hines, but concluding that plan administrator had, in fact, considered the SSA's award of disability benefits).

-15-

Although no substantive medical findings were issued by the SSA in connection with its award of disability benefits to plaintiff, the award, itself, is not without significance.  For purposes of the SSA, an individual is "disabled" if he has an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a).  The <u>Hines</u> court found this language to be sufficiently similar to the plan language at issue, which classified a claimant as disabled where he was "'limited from performing the material and substantial duties of [his] regular occupation due to sickness and injury.'"  <u>Hines</u>, 110 F. Supp. 2d at 468 (internal citation omitted).  Considering that the STD Plan's definition of "disability" is at least as analogous to the SSA's definition as was that at issue in <u>Hines</u>, one would expect MetLife to have included the award among the evidence it considered in reviewing plaintiff's claim.

Importantly, the Plan's very terms obligate it to consider such evidence.  With regard to filing an appeal, the STD Plan states as follows:

> As part of the employee's appeal, the employee may submit any written comments, documents, records, or other information relating to the employee's claim.  After MetLife receives the employee's written request appealing the initial determination, MetLife will conduct a full and fair review of the employee's claim.  Deference will

-16-

not be given to the initial denial, and MetLife's review
will look at the claim anew.  The review on appeal will
take into account <u>all comments, documents, records, and
other information that the employee submits relating to
the employee's claim</u> without regard to whether such
information was submitted or considered in the initial
determination.

(Doc. No. 18-2 at SM-100010 (emphasis added).)  MetLife's failure

to consider the SSA award thus implicates at least the first and

third <u>Booth</u> factors.

In <u>Elliott</u>, the Fourth Circuit explained that, in reviewing

a plan administrator's discretionary decision, a district court

must limit the scope of its assessment to the facts known to the

plan administrator at the time it made its decision.  <u>Elliott</u>,

190 F.3d at 608.  If the plan administrator lacked adequate

evidence when it made its decision, the case should be remanded

to the administrator for reconsideration.  <u>Id.</u> at 609.  The

<u>Elliott</u> court cautioned, however, that "'remand should be used

sparingly.'"  <u>Id.</u> (quoting <u>Berry v. Ciba-Geigy Corp.</u>, 761 F.2d

1003, 1007 (4th Cir. 1985)).  "Remand is most appropriate '<u>where
the plan itself commits the trustees to consider relevant
information which they failed to consider</u> or where [the] decision

involves records that were readily available and records that

trustees had agreed that they would verify.'"  <u>Elliott</u>, 190 F.3d

at 609 (quoting <u>Berry</u>, 761 F.2d at 1008)(emphasis added).

In the case at hand, the Plan, itself, commits the plan

administrator to consider all materials submitted by the claimant

-17-

in reviewing the claimant's appeal.  Nonetheless, MetLife's final denial of Mr. Crouch's claim indicates that it did not review the SSA's award of benefits – an award which has at least some evidentiary significance even in the absence of substantive medical findings by the SSA.  Moreover, MetLife failed to inform Dr. Rosenberg of the award for purposes of his independent review of plaintiff's cardiac condition.  These failures constitute an abuse of discretion necessitating reconsideration of plaintiff's claim by the plan administrator.[5]

### IV.  <u>Conclusion</u>

Having concluded that MetLife abused its discretion in failing to address the evidence relating to plaintiff's award of disability benefits by the SSA, the court hereby **DENIES** defendants' motion for summary judgment (Doc. No. 20), and **GRANTS** plaintiff's motion for summary judgment (Doc. No. 23) to the extent it seeks remand to the plan administrator for reconsideration.  The court further **DENIES** plaintiff's motion to strike defendants' memorandum in opposition (Doc. No. 27), which the court finds was timely filed.

---

[5] To the extent plaintiff seeks remand on the basis that MetLife lacked a sufficiently complete copy of plaintiff's medical records, the court notes that MetLife appears to have made considerable efforts toward obtaining plaintiff's medical records.  To be sure, plaintiff had ample opportunity to submit any records he wished MetLife to review in making its determination.

-18-

The Clerk is directed to remove this action from the court's active docket and to send copies of this Memorandum Opinion and Order to counsel of record.

It is **SO ORDERED** this 29th day of September, 2009.

ENTER:

David A. Faber
Senior United States District Judge

-19-